19087. HUFF *v.* ANDERSON *et al.*

ARGUED SEPTEMBER 14, 1955—DECIDED OCTOBER 11, 1955—
REHEARING DENIED NOVEMBER 16, 1955.

*Sam S. Harben,* for plaintiff in error.
*Fred Craven, Wheeler, Robinson & Thurmond,* contra.

ALMAND, Justice. R. M. Anderson and others, as citizens and taxpayers of White County, filed their petition and information in the nature of a quo warranto, challenging the right of E. J. Huff to hold the position of County School Superintendent of White County, and alleged two grounds of disqualification. The demurrers and a plea of estoppel filed by the respondent being overruled, the case came on for trial upon the petition and response before the court and a jury. At the conclusion of the evidence, on motion of the plaintiffs, the court directed a verdict in their favor, and entered a judgment removing Huff from said office. The respondent's motion for a new trial was denied, and he assigns error on certain interlocutory rulings and on the judgment denying a new trial.

The respondent, by plea, asserted that R. M. Anderson, one of the petitioners, was estopped from maintaining this action,

because prior to filing the present petition Anderson had sought a writ of mandamus against Huff as Superintendent of White County Schools, to require Huff in his official position to issue to him a warrant as compensation for operating a school bus in White County. In the quo warranto action, Anderson is proceeding against Huff not in his individual capacity, as was his status in the mandamus case, but in his representative capacity as a citizen and taxpayer. As a citizen and taxpayer, Anderson had the right to inquire into the right of the respondent to hold a public office. *Clarke* v. *Long,* 152 *Ga.* 619 (1) (111 S. E. 31); *Malone* v. *Minchew,* 170 *Ga.* 687 (1) (153 S. E. 773).

■ The petition alleged that the respondent was elected School Superintendent of White County in 1952 and now holds said office, and that he is ineligible to hold such office because he had on April 29, 1942, entered a plea of guilty in the United States District Court for the Northern District of Georgia to an indictment charging him with presenting false claims against the United States, and was sentenced to a term of five years on probation by the court. A certified copy of the indictment, together with the defendant's plea of guilty and the sentence of the court, were admitted in evidence without objection. This indictment in five counts charged that the defendant on five different dates did knowingly, wilfully, and unlawfully make and present certain claims against a department of the United States Government, knowing such claims to be false, fictitious, and fraudulent, by presenting certain vouchers for stated amounts of money calling for the payment of wages for services rendered by named persons, when in truth and fact such wages had not been earned. This indictment charged a violation of § 287, 62 St. at Large p. 698 (18 U. S. C. A. § 287), which provides that one guilty of violating said section shall be fined not more than $10,000 or imprisoned for not more than 5 years, or both.

Art. 8, sec. 6, par. 1 of the Constitution of Georgia of 1945 (Code, Ann., § 2-6901) provides that a county school superintendent shall be the executive officer of the county board of education, and that his qualifications shall be fixed by law. Code § 32-1004 provides that, "Before any person shall be qualified or eligible to the office of county superintendent of schools,

he shall . . . be a person of good moral character, never convicted of any crime involving moral turpitude."

The respondent insists that the crime to which he pleaded guilty and for which he was given a suspended sentence was not one involving moral turpitude. To this contention we cannot agree. In *Holloway* v. *Holloway*, 126 *Ga.* 459, 460 (55 S. E. 191, 7 L. R. A. (NS) 272, 115 Am. St. R. 102, 7 Ann. Cas. 1164), this court defined moral turpitude as follows: "Turpitude, in its ordinary sense involves the idea of inherent baseness or vileness, shameful wickedness, depravity. Webster's Inter. Dict. In its legal sense it includes everything done contrary to justice, honesty, modesty, or good morals. Black's Law Dict.; Bouvier's Law Dict. The word 'moral,' which so often precedes the word turpitude, does not seem to add anything to the meaning of the term, other than that emphasis which often results from a tautological expression. All crimes embraced within the Roman's conception of the crimen falsi involve turpitude; but it is not safe to declare that such crimes only involve turpitude." " 'Moral turpitude' is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." 27 Words & Phrases (Perm. ed.), p. 560, and citations therein. It appears from the authorities to be the rule without exception, that the offenses of obtaining money from another by fraud or false pretenses, or larceny after trust, are crimes malum in se, involving moral turpitude. Jordan *v.* De George, 341 U. S. 223 (71 Sup. Ct. 703, 95 L. ed. 886); In re Needham, 364 Ill. 65 (4 N. E. 2d 19); In re Hopkins, 54 Wash. 569 (103 Pac. 805); Bermann *v.* Reimer, 123 Fed. 2d 331; *James* v. *State,* 73 *Ga. App.* 834 (7) (38 S. E. 2d 125). The offense to which the respondent pleaded guilty and was sentenced is one involving moral turpitude.

■ The respondent insists that, though he pleaded guilty to the indictment, he had not been finally sentenced, and therefore under Code § 89-101 (3) is not ineligible to hold public office. This section has no application here, for the reason that Code § 32-1004, which defines the qualifications of county school superintendents, does not require that one be convicted "and sentenced" before he is ineligible to hold the office by reason of

a crime involving moral turpitude. A plea of guilty, accepted and entered by the court, is a "conviction" within the meaning of that word. State *v*. Robinson, 224 N. C. 412 (30 S. E. 2d 320); Commonwealth *v*. Simmons, 361 Pa. 391 (65 Atl. 2d 353). A suspension of the sentence entered on a plea of guilty does not relieve the defendant from being convicted of the offense with which he was charged. Commonwealth *v*. Lockwood, 109 Mass. 323 (12 Am. R. 699); Matter of Richetti *v*. New York State Board of Parole, 300 N. Y. 357 (90 N. E. 2d 893); Pino *v*. Nicolls, 215 Fed. 2d 237.

4. The refusal of the court, as complained of in four of the special grounds of the motion for new trial, to admit in evidence testimony by the defendant and one witness that the defendant in making false claims against the United States did not do so with any ulterior motive and did not personally receive any benefit by reason of such claims, was not error for any reason assigned. These were matters of defense to the charge in the Federal court. The plea of guilty and sentence thereunder foreclosed any further investigation of the intent, motive, or good faith of the defendant, where the issue, as here, was the eligibility of the defendant to hold the office of county superintendent of schools.

5. It being established without dispute that the respondent was ineligible to hold the office of School Superintendent of White County, the court did not err in directing a verdict in favor of the petitioners and entering a judgment of ouster, and in thereafter denying the respondent's motion for a new trial as amended.

*Judgment affirmed. All the Justices concur.*