[Civ. No. 49387. Second Dist., Div. Five. Jan. 27, 1977.]

BRIAN CAREY, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

**COUNSEL**

Murphy, Thornton, Hinerfeld & Cahill and Wallace L. Rosvall for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Robert McKim Bell, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—Appellant Brian Carey, D.P.M. (doctor of podiatry) was convicted in the United States District Court on two counts of having violated 18 United States Code section 1001 (making false statements to a federal agency). The facts underlying the federal criminal case were that Dr. Carey submitted a claim for compensation to Medicare, stating that he performed surgery on the feet of a patient named Celious, and that he performed surgery on the feet of a patient named Grinner, when in fact no such surgeries were performed by him.

Dr. Carey's criminal conviction was upheld on appeal by the Ninth Circuit Court of Appeals in *United States* v. *Carey,* 475 F.2d 1019.

Based on the record of conviction, as well as upon oral testimony relating to the same facts given at the administrative hearing, the Board of Medical Examiners, State of California[1] concluded that Dr. Carey had been convicted of crimes involving moral turpitude within the meaning of Business and Professions Code sections 2361, subdivision (e); 2383; and 2411. This appeal concerns section 2383.[2]

By its decision, the board revoked Dr. Carey's license to practice podiatric medicine, but stayed the revocation and placed Dr. Carey on probation to the committee for a period of five years on the condition, among others, that he serve an actual suspension of one year.

Dr. Carey prosecuted two appeals by way of writ of mandamus to the Los Angeles superior court. The first writ proceeding alleged that the board had failed to make a specific finding on moral turpitude. The superior court found this to be true and remanded the case back to the medical board for further findings. The board then made a specific finding that Dr. Carey had been convicted of crimes involving moral turpitude. The second petition filed by Dr. Carey asserted that moral turpitude was not involved in the convictions. The superior court disagreed and denied his petition. This appeal followed.

■ The sole issue on appeal is whether Dr. Carey was convicted of a crime involving moral turpitude.

---

[1]On December 12, 1975, during the pendency of these proceedings, as a consequence of the amendment of sections 2100 and 2100.2 of the Business and Professions Code, the name of the Board of Medical Examiners was changed to the Board of Medical Quality Assurance.

[2]Section 2383 provides that: "The conviction of either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude constitutes unprofessional conduct within the meaning of this chapter. The record of conviction shall be conclusive evidence only of the fact that the conviction occurred. The board may inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if such conviction is of an offense involving moral turpitude. A plea or verdict of guilty or a conviction following a plea of nolo contendere made to a charge of a felony or of any offense involving moral turpitude is deemed to be a conviction within the meaning of this section. The board may order the license suspended or revoked, or may decline to issue a license, when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code allowing such person to withdraw his plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information or indictment."

Cases defining "moral turpitude" are now numerous. The case history leading up to the present concept of these two words, except as cited here, is unnecessary.[3] Decisional law clearly sets forth the applicable rules to be applied to the present case. Moral turpitude includes fraud and a crime in which an intent to defraud is an essential element. (*In re Hallinan,* 43 Cal.2d 243, 247 [272 P.2d 768]; *Mercer* v. *Lence,* 96 F.2d 122, 124; and *Jordan* v. *DeGeorge,* 341 U.S. 223, 227, 232 [95 L.Ed. 886, 892-893, 71 S.Ct. 703].)

Dr. Carey was convicted of two counts of having knowingly made false and fictitious statements to various insurance intermediaries acting as paying agents for the Social Security Administration under the Medicare Program in violation of 18 United States Code section 1001. This section states: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device, a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

To support a conviction of a crime defined by the above section, and one similar to that involved here, it must be shown that the defendant knowingly and willfully made a false, fictitious or fraudulent statement or representation. Notable is the requirement of specific intent. The statute cannot be read in such ways to permit punishment of one responsible only for innocent or inadvertent misrepresentation. When the crime is viewed in the light of the circumstances under which it occurred, it is clear that Dr. Carey was charged with, and convicted of, nothing less than attempting to defraud and cheat the federal government by false pretenses. We agree with respondent that his conviction, as affirmed by the Ninth Circuit Court of Appeals, is convincing proof that all of the necessary elements of the crimes involved were present.

A case notably in point is *Huff* v. *Anderson,* 212 Ga. 32 [90 S.E.2d 329, 52 A.L.R.2d 1310] decided by the Supreme Court of Georgia. Mr. Huff, a county school superintendent had entered a plea of guilty in United

[3]For the record, a few of the key cases are: *Jordan* v. *DeGeorge,* 341 U.S. 223 [95 L.Ed. 886, 71 S.Ct. 703]; *Chanan Din Khan* v. *Barber,* 147 F.Supp. 771; *Stanford* v. *The State Bar of California,* 15 Cal.2d 721 [104 P.2d 635]; and *Matter of Coffey,* 123 Cal. 522 [56 P. 448].

States District Court to an indictment charging him with presenting vouchers for stated amounts of money calling for payment of wages for services rendered that had not been earned. The court in response to the claim that such a crime did not involve moral turpitude said: ". . . It appears from the authorities to be the rule without exception, that the offenses of obtaining money from another by fraud or false pretenses, or larceny after trust, are crimes . . . involving moral turpitude." (90 S.E.2d at p. 331.)

California decisional law on this issue, briefly referred to *supra*, is directly in point. In *In re Hallinan, supra*, 43 Cal.2d 243, the court stated on pages 247-248: "Although the problem of defining moral turpitude is not without difficulty [citations]; it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. [Citations.] It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude. [Citations.] . . . We see no moral distinction between defrauding an individual and defrauding the government . . . ." And in *In re Silverton*, 14 Cal.3d 517 [121 Cal.Rptr. 596, 535 P.2d 724], the court found moral turpitude was involved where an attorney was convicted of conspiracy to obtain money by false pretenses by presenting a false insurance claim.

We are satisfied that the crime for which Dr. Carey was convicted clearly involved moral turpitude, and that there was no error by the superior court in so concluding.

The order denying the writ of mandate is affirmed.

Kaus, P. J., and Ashby, J., concurred.