[Civ. No. 49892. Second Dist., Div. Five. Mar. 31, 1978.]

SEYMOUR MATANKY, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Appellant.

**COUNSEL**

David E. Kenner, Jeffrey C. McIntyre and Kenner, Buzard, Larson & McIntyre for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Steven M. Kahn, Deputy Attorney General, for Defendant and Appellant.

**OPINION**

**STEPHENS, J.**—This appeal is from a judgment of the superior court, entered pursuant to Code of Civil Procedure, section 1094.5, ordering the issuance of a peremptory writ of mandate directing the Board of Medical

Examiners of the State of California (Board)[1] to set aside its decision revoking the license of Dr. Seymour Matanky (Matanky), and to reconsider the same in light of the court's findings of fact and conclusions of law. Both the Board and Matanky appeal from this judgment. Since we conclude that the evidence establishes as a matter of law that Matanky committed acts involving moral turpitude related to his licensed activities indicating his unfitness to practice medicine, and that the Board did not clearly abuse its discretion by ordering revocation of the license, we reverse the judgment.[2]

## FACTS

On December 12, 1972, Matanky was convicted in the United States District Court for the Central District of California of 39 counts for violation of 18 United States Code section 1001.[3] Matanky received a suspended prison sentence and as a condition of probation ordered to pay a fine in the amount of $1,500 per count convicted, for a total fine of $58,500. The conviction was affirmed on appeal. (*United States* v. *Matanky* (9th Cir. 1973) 482 F.2d 1319, cert. den. (1973) 414 U.S. 1039 [38 L.Ed.2d 329, 94 S.Ct. 539].) The facts underlying the conviction, as contained in the indictment, were that for a period covering November 1968 to October 1970, Matanky submitted 39 claim forms (Request for Medicare Payment—Form 1490) to private insurance carriers who were under contract with the federal government to process and pay Medicare claims. The claim forms signed by Matanky contained "false, fictitious and fraudulent statements and representations" that he rendered medical services to 13 convalescent hospital patients on specified dates or for a

[1]On December 12, 1975, the name of the Board of Medical Examiners was changed to the Board of Medical Quality Assurance. This Board has the power to revoke certificates to practice medicine.

The consolidated case, No. 49891, is against an administrative agency with the power only to suspend a practitioner from participating in the medical assistance program as a provider of services.

[2]The opinion in a consolidated appeal (case No. 49891) is filed this date as not certified for publication. That appeal was by Dr. Matanky seeking to mandate the department to reconsider its discussion to suspend Dr. Matanky from participating as a provider in the California Assistance Program. We affirmed the trial court's denial of such a writ.

[3]18 United States Code section 1001 provides as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

certain number of days per month "when in truth and in fact as the defendant then and there well knew he had not rendered said medical services."

Subsequent thereto, the State Department of Health (Department) and the Board filed separate accusations charging that Matanky committed a felony involving moral turpitude related to his licensed activities and alleging that he was therefore subject to disciplinary action. Pursuant to section 51458, title 22 of the California Administrative Code, and the rules and regulations of the Department of Health, the Department sought to suspend Matanky and the medical facility that he then solely owned, Corbin Medical Clinic, from participation in the state Medi-Cal program. The Board, pursuant to Business and Professions Code, section 2383,[4] requested that disciplinary action be taken against Matanky's medical license.

The accusations were consolidated and were heard jointly before a state administrative hearing officer. After offering into evidence the accusations, Matanky's responses thereto, and copies of the federal court records, including the indictment and the certificate of judgment and commitment, the Board rested. Thereupon, evidence was offered by Matanky as to the circumstances surrounding the acts involved in the conviction. Section 2383 specifically empowers the Board to take evidence as to the surrounding circumstances in order for it to determine whether the acts involved moral turpitude and to fix the degree of discipline to be imposed. Matanky's counsel expressly disavowed that such evidence was intended to collaterally attack the conviction. Counsel stated that the evidence was introduced solely for the purpose of mitigating any possible penalty that the Board might impose. Nonetheless, counsel attempted to explain that the basis for each count of the indictment upon which Matanky was convicted was unfounded.

In 11 of the counts, it was found through the necessary implication of the guilty verdicts on each that Matanky had not visited the named patients on the dates specified on the claim forms. Matanky introduced evidence indicating that for these counts he had either actually visited the patients on the dates specified, or that though the dates on the forms were inaccurate, he had, on different dates, rendered the medical services he had charged for. For five of these counts, Matanky had billed Medicare for visits on January 4, 1970, although on that date he was on

---

[4]Unless otherwise specifically noted, all section references are to the Business and Professions Code.

vacation. Matanky, while admitting that the date on the claim form was incorrect, claimed that he had rendered such services on his return from his vacation the next day, January 5. In one of the counts, Matanky had charged for a hospital visit on a date when the patient had left the hospital. Matanky explained that the inaccuracies in the billing were the result of poor record keeping practices. For the period covering the indictment, he would, as standard office procedure, submit claims indicating Sunday and Thursday hospital visits irrespective of the date he actually rendered such services. Also, for this period Matanky often failed to record the fact that he had rendered medical services at the time of the hospital visits. Instead, Matanky employed a method called bracketing whereby he back-dated his medical records relying on information from his memory. Matanky would denote the back-dating on the records by enclosing the date in parentheses.

As to the other counts contained in the indictment, it was found that Matanky had not made as many visits per month as he stated in the claim forms. By his own testimony, and without supportive documentation, Matanky asserted that he had visited each patient the number of times he indicated on the claim forms.

As evidence of rehabilitation, Matanky stated that he had adopted new office procedures wherein hospital visits were recorded concurrently at the time of the visit, and dates billed for would accurately reflect the date on which the visit was actually made. However, these changes were instituted in January 1974, and, as of that date, Matanky no longer billed Medicare or Medi-Cal under his own vendor number. Also, evidence was offered by Matanky as to his reputation in the community in which he resided for truth, honesty and integrity, and as to his reputation in the medical community for competence and skill.

The hearing officer made specific findings of fact concerning the circumstances surrounding the conviction. The hearing officer found that Matanky had submitted "false and fraudulent claims for compensation for convalescent hospital visits allegedly made to certain named patients" and that Matanky "in fact had not made the said alleged convalescent hospital visits." On that basis, the hearing officer concluded that Matanky had committed a felony and an offense involving moral turpitude related to his medical activities. With respect to the Board proceeding, the hearing officer found Matanky guilty of unprofessional conduct as defined in section 2383 and ordered his license revoked. As to the Department proceeding, it was ordered that Matanky and Corbin

Medical Clinic be suspended from participation as providers in the Medi-Cal program. The Board and Department adopted the hearing officer's proposed decisions in full.

Matanky thereafter filed a petition for a writ of mandate pursuant to Code of Civil Procedure, section 1094.5, to have the superior court review and set aside the Board and Department decisions. The evidence before the court consisted solely of the transcript and exhibits of the administrative hearing. The matters were again consolidated and heard jointly. The court denied the writ of mandate as to the Department proceeding, but did order a peremptory writ issued in the Board proceeding. The losing party in each proceeding requested findings of fact and conclusions of law, which were prepared by the prevailing party.

In the Board proceeding, the trial court found that "[t]he decision of the Board of Medical Examiners provides for a disciplinary order which constitutes an abuse of discretion and the Board of Medical Examiners acted arbitrarily in completely and unconditionally revoking SEYMOUR MATANKY's license." The court failed to make a finding on whether Matanky's conduct involved moral turpitude. Moreover, nowhere in the document did the court find or conclude that Matanky committed any act which made him subject to disciplinary action. However, the court ordered "[t]hat a peremptory writ of mandate issue directing the Board of Medical Examiners to set aside its decision and reconsider the case in the full light of the opinions expressed in this [sic] findings of fact and conclusions of law." The Board objected to these findings on the grounds of vagueness and ambiguity. Further, the Board filed proposed counterfindings of fact and conclusions of law, including those on the issue of moral turpitude. These counterfindings and conclusions were not ruled upon by the court.

In the Department proceeding, the same court, after noting that it exercised an independent review of the evidence, found that Matanky had suffered a felony conviction and found that the conduct underlying the conviction was the submission of "false and fraudulent claims for compensation for convalescent hospital visits allegedly made to certain named patients, when petitioner Seymour Matanky in fact had not made the said alleged convalescent hospital visits." However, based on objections by Matanky, the court struck from its findings and conclusions that Matanky had committed acts involving moral turpitude related to his medical activities.

Both Matanky and the Board appealed the court's judgment in the Board proceeding. The judgment in the Department proceeding is the subject of a separate appeal by Matanky.

I

■ Where findings of fact are requested on material issues, but are not made, an appellate court cannot infer that the trial court found in favor of the prevailing party on such issues. (*McAdams* v. *McElroy* (1976) 62 Cal.App.3d 985, 995 [133 Cal.Rptr. 637].) Thus, we cannot infer that issues raised in the Board's counterfindings and conclusions were resolved by the court in favor of Matanky. ■ Further, a judgment rendered without findings on all material issues that are raised by the pleadings and that are supported by substantial evidence, must be reversed. (*Anderson* v. *Southern Pac. Co.* (1968) 264 Cal.App.2d 230, 235 [70 Cal.Rptr. 389].) The failure to find that Matanky committed acts involving moral turpitude or otherwise find that he was subject to disciplinary action in the Board proceeding would ordinarily demand we reverse that judgment and remand it to the trial court for further findings. However, findings on such issues were made in the Department proceeding. We take judicial notice of those findings. (Evid. Code, §§ 452, 459.) ■ Where findings of facts and conclusions of law for separate but similar actions are made by the same trial judge, based on identical records, it is logical and proper to construe such findings and conclusions together. Thus, the findings and conclusions of the Board and Department, since made by the same judge on the identical administrative record, shall be read together. The deficiencies found in the Board proceedings can thereby be cured.

II

■ Pursuant to section 2383, "[t]he conviction of either (1) a felony or (2) any offense, misdemeanor or felony, involving moral turpitude constitutes unprofessional conduct" which can serve as the basis for disciplinary action by the Board. The section makes clear that the conviction of a felony constitutes grounds for disciplinary action, without regard to whether the offense in question involves moral turpitude. (*Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 330 [308 P.2d 924].) Thus, evidence of Matanky's conviction of 18 United States Code section 1001, a felony, alone made him the proper subject of disciplinary action. Therefore, a finding of moral turpitude was not necessary to warrant the imposition of discipline in this case. However,

the Board's finding of moral turpitude as part of a basis for imposing discipline, if unsupported, might have erroneously led to its decision to revoke Matanky's license. (See *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 69 [64 Cal.Rptr. 785, 435 P.2d 553].) Therefore, we make the further inquiry into whether Matanky committed acts involving moral-turpitude.

█ Since the minimum elements for a conviction under 18 United States Code section 1001, do not necessarily involve moral turpitude (*Hirsch* v. *Immigration and Naturalization Service* (9th Cir. 1962) 308 F.2d 562, 567), evidence of the record of Matanky's conviction cannot, in and of itself, establish the existence of moral turpitude. (*Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 766-767 [129 Cal.Rptr. 462, 548 P.2d 1134].) However, an offense that does not necessarily involve moral turpitude may nonetheless be committed by acts involving moral turpitude (*Lorenz* v. *Board of Medical Examiners* (1956) 46 Cal.2d 684, 687 [298 P.2d 537].)

Section 2383 permits the Board to inquire into the circumstances surrounding the commission of the crime in order to determine whether moral turpitude is involved. However, this inquiry should not form the basis of impeaching a prior conviction. The Board, in the instant case, at the administrative hearing, in addition to introducing the record of conviction, also offered into evidence a copy of the federal indictment. The indictment describes the conduct which the jury found to be true. Matanky was convicted of submitting to the various Medicare insurance carriers claim forms which contained "false, fictitious and fraudulent statements and representations." For approximately a third of the counts, Matanky was found not to have visited his patients on the dates contained in the claim forms. In the remaining counts he was found not to have visited his patients as many times as he claimed. Notwithstanding his defense that he rendered all of the services he charged for, the circuit court of appeal found that his conviction was supported by substantial evidence. Matanky should not be able to challenge that judgment here. (*Carey* v. *Board of Medical Examiners* (1977) 66 Cal.App.3d 538, 541 [136 Cal.Rptr. 91]; *Bernstein* v. *Board of Medical Examiners* (1962) 204 Cal.App.2d 378, 381 [22 Cal.Rptr. 419].) Matanky's evidence of so-called mitigation introduced at the hearing was in actuality an attempt to impeach that judgment.

Further, at the administrative hearing, it was the duty of the hearing officer to weigh and appraise the evidence. (*Hohreiter* v. *Garrison* (1947)

81 Cal.App.2d 384, 401 [184 P.2d 323].) The hearing officer was free to accept or reject Matanky's explanation of the circumstances surrounding the commission of the crime. Apparently, the hearing officer rejected such explanation when he found that Matanky had submitted false and fraudulent claims for services not rendered. The hearing officer could have reached this conclusion solely on the basis of the evidence presented by Matanky. (*Morris* v. *Board of Medical Examiners* (1964) 230 Cal.App.2d 704, 712 [41 Cal.Rptr. 351, 12 A.L.R.3d 1201].) The trial court, upon its independent review of the evidence, also found the same to be true. These findings were supported by substantial evidence. In fact, the findings by the Board and by the court are without conflict. It is the ultimate conclusion, i.e., of whether the facts constitute moral turpitude, which is in question. The Board found that there was, the trial court avoided making that conclusion, one way or the other. The fact that the trial court failed to make the conclusion is now of no moment for, it being a conclusion of law, the appellate court must make it.

■ As stated in *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, at pages 74-75, footnote 7: "The determination of whether or not certain conduct involves 'moral turpitude' is a 'question of law' in the sense that it should be decided by an appellate court. [Citations.] This rule merely exemplifies the generally accepted proposition that the ultimate conclusion to be drawn from undisputed facts is a question of law for an appellate court. [Citations.] Thus, once the 'facts' are established pursuant to the *Moran* [32 Cal.2d 301 (196 P.2d 20)] rule, this court must reach an independent decision as to whether Dr. Yakov's conduct demonstrated moral turpitude."

In *In re Hallinan* (1954) 43 Cal.2d 243, 247-248 [272 P.2d 768], the court summarized the California decisional law defining moral turpitude and stated: "Although the problem of defining moral turpitude is not without difficulty [citations], it is settled that whatever else it may mean, it includes fraud and that a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. [Citations.] It is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude.... We see no moral distinction between defrauding an individual and defrauding the government...."

■ This court in *Carey* v. *Board of Medical Examiners, supra,* 66 Cal.App.3d 538, held that violations of 18 United States Code section 1001, when committed under circumstances similar to those at bench, fit

within the *Hallinan* definition and is conduct involving moral turpitude. Both in *Carey* and the present case, the physicians in question charged Medicare for services they did not render. Thus, we find the following statement from *Carey* directly applicable: "When the crime is viewed in the light of the circumstances under which it occurred, it is clear that Dr. Carey was charged with, and convicted of, nothing less than attempting to defraud and cheat the federal government by false pretenses." (66 Cal.App.3d at p. 541.) The Board was entitled to consider the fact of such moral turpitude in fixing the degree of discipline.

## III

The Board specifically adopted the hearing officer's decision to revoke Matanky's medical license. The trial court found such a disciplinary order an abuse of discretion. On appeal, the Board contends that in so holding the trial court erred.

■ While the trial court must exercise its independent judgment in determining whether the administrative findings are supported by substantial evidence, the propriety of discipline imposed by an administrative agency is a matter vested in the sound discretion of that agency and cannot be disturbed by a reviewing court unless there has been a manifest abuse of discretion. (*Fick* v. *Board of Medical Examiners* (1973) 31 Cal.App.3d 247, 252 [107 Cal.Rptr. 260].) "[I]n reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh. [Citation.]" (*Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901].) The rationale underlying this rule of review is that the courts should pay great deference to the expertise of the administrative agency in determining the proper penalty to be imposed. (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967 [103 Cal.Rptr. 455].)

■ In our opinion, the Board considered all factors involved in the case including evidence of rehabilitation and mitigation, and on that basis rendered its decision. Considering that Matanky submitted intentionally false and fraudulent claims inferably for the purpose of personal gain, and the number of such claims, we cannot say that the Board was manifestly arbitrary *as a matter of law in its decision to revoke*

Matanky's license. Though reasonable minds could differ as to the propriety of the decision, that is not sufficient to constitute an abuse of discretion. (*Cadilla* v. *Board of Medical Examiners, supra,* 26 Cal.App.3d at p. 968.)

## IV

██ Citing, among other cases, *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] and *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67, Matanky correctly asserts that a professional license may be revoked only if the conduct upon which the revocation is based relates to the practice of the particular profession and thereby demonstrates an unfitness to practice such profession. Based on the testimony and letters of physicians, patients and friends attesting to his reputation in the community in which he resides for truth, honesty and integrity and to his reputation in the community in which he practices for competence and skill, Matanky argues that there is no evidence demonstrating his unfitness to practice medicine.

██ "The revocation or suspension of a license is not penal, but rather, the Legislature has provided for such to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty and integrity." (*Furnish* v. *Board of Medical Examiners, supra,* 149 Cal.App.2d 326, 331.) ██ A physician can be subject to disciplinary action notwithstanding his technical competence or skill under circumstances where his moral character is in dispute. (See *Weissbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, 932 [116 Cal.Rptr. 479], conc. opn.; generally, Annot., 12 A.L.R.3d 1213.) Intentional dishonesty, especially involving moral turpitude, demonstrates a lack of moral character and satisfies a finding of unfitness to practice medicine. (*Furnish* v. *Board of Medical Examiners, supra,* 149 Cal.App.2d 326 [convicted of willfully and knowingly attempting to defeat and evade federal income tax]; *Morris* v. *Board of Medical Examiners, supra,* 230 Cal.App.2d 704 [convicted of willfully and knowingly attempting to defeat and evade federal income tax]; see also *Eisenstein* v. *Board of Regents of the Univ. of N.Y.* (1966) 26 App.Div.2d 971 [274 N.Y.S.2d 707] [submitted or aided in the submission of a substantial number of false claims to county welfare department for medical treatment]; *Glashow* v. *Allen* (1966) 27 App.Div.2d 625 [275 N.Y.S.2d 994] [physician filed false and fraudulent bills, claim forms and

reports]; *D'Alois* v. *Allen* (1969) 31 App.Div.2d 983 [297 N.Y.S.2d 826] [physician submitted fraudulent claim forms to government agency for services not actually rendered].)

Further, in this case the conduct upon which Matanky was convicted was related to professional activities. If he had charged a patient for services not actually rendered, there could be no question that such conduct was related to medical practice. We see no distinction in fact that he attempted to defraud the federal government. Though it was not a patient, the federal government, who paid the bills, was nonetheless a "client" in the professional practice of Matanky. He also defrauded the patient for the federal government only pays on behalf of the patient.

The judgment of the trial court is reversed. The cause is remanded with directions that the trial court enter its order in conformity with this opinion.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied April 19, 1978, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied May 25, 1978. Bird, C. J., did not participate therein.