Filed 6/29/16 Certified for Publication 7/11/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMIR PIROUZIAN,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>      Respondent;<br><br>MEDICAL BOARD OF CALIFORNIA,<br><br>      Real Party in Interest. | B266015<br><br>(Los Angeles County<br>Super. Ct. No. BS148788)<br><br>OPINION AND ORDER<br>GRANTING PEREMPTORY<br>WRIT OF MANDATE |

ORIGINAL PROCEEDING; petition for writ of mandate.  James C. Chalfant, Judge.  Petition granted.

Law Offices of William J. Kopeny and William J. Kopeny for Petitioner.

Kamala D. Harris, Attorney General, Gloria L. Castro, Assistant Attorney General, Thomas S. Lazar and Martin W. Hagan, Deputy Attorneys General, for Real Party in Interest.

No appearance for Respondent.

The Medical Board of California (the Board) revoked Amir Pirouzian, M.D.'s medical license. Dr. Pirouzian filed a petition in the superior court for a writ of administrative mandamus to set aside the Board's decision, which the trial court denied. Dr. Pirouzian then filed a petition for writ of mandate in this court. We requested opposition and notified the parties of our intention to issue a peremptory writ. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 (*Palma*).) We now grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The Board granted a medical license to Dr. Pirouzian in 1996. Before the actions that gave rise to this proceeding, Dr. Pirouzian had no record of disciplinary action against him. It is undisputed that he is, as the administrative law judgment (ALJ) found, "a highly skilled, competent physician and surgeon who has never been found responsible for causing any patient harm."

In 2006, Dr. Pirouzian began working as a pediatric ophthalmologist at Children's Specialists of San Diego (CSSD). CSSD provided him with a group disability insurance plan from Northwestern Mutual. Dr. Pirouzian purchased additional disability insurance from the same insurer.

On August 1, 2006, Dr. Pirouzian took a medical leave of absence from CSSD due to depression. A psychiatrist, Dr. Brett Johnson, diagnosed Dr. Pirouzian as suffering from a recurring "major depressive disorder," and certified him as being totally and temporarily disabled. While on leave, Dr. Pirouzian submitted claims for and received disability insurance benefits from Northwestern Mutual.

In October 2006, Dr. Johnson released Dr. Pirouzian to return to CSSD on a part-time basis, and Northwestern Mutual reduced his disability payments. In late December 2006, Dr. Pirouzian applied for full-time employment with Kaiser Permanente Santa Clara Medical Hospital (Kaiser). He accepted an offer for the position in May 2007 and began working at Kaiser as an ophthalmologist in July. At the same time, CSSD placed Dr. Pirouzian on unpaid medical leave. Meanwhile, he failed to

2

disclose to Dr. Johnson, CSSD, or Northwestern Mutual that he had applied for, and accepted, the position at Kaiser.

For approximately three months—from July 2007 to October 2007—Dr. Pirouzian made a series of affirmative misrepresentations regarding his employment status to Dr. Johnson, CSSD, Northwestern Mutual, and the California Employment Development Department (EDD). Specifically: (1) he failed to tell Dr. Johnson or CSSD that he had accepted the position with Kaiser; (2) two weeks after Dr. Pirouzian began working at Kaiser, he falsely told a Northwestern Mutual benefits specialist that he was not working, and repeated this falsehood in a letter to Northwestern Mutual the next day; (3) approximately one week later, Dr. Pirouzian spoke by telephone with another Northwestern Mutual benefits specialist and falsely told her that he had been visiting family in Iran in July and would be spending more time with them in August; (4) in a written financial statement that called for information about Dr. Pirouzian's salary for each of his employers, he identified CSSD as his employer (from whom he received no income), and did not disclose his employment with Kaiser; (5) in early September, Dr. Pirouzian signed an EDD form stating that he had worked "0" hours from July 30 to August 12, had no earnings, and was unable to work as a result of a disability; and (6) in late September, Dr. Pirouzian falsely told a Northwestern Mutual benefits specialist that he was in Europe. As a result of Dr. Pirouzian's misrepresentations and the concealment of his employment with Kaiser, Northwestern Mutual continued to pay disability benefits to him.

Northwestern Mutual discovered the misrepresentations in October 2007 and cancelled Dr. Pirouzian's insurance. He had received approximately $10,700 in disability payments that should not have been paid.[1] During an investigation by the Department of

---

[1] In his petition, Dr. Pirouzian stated that the "actual amount" he received was approximately $8,600, and indicated that references to larger amounts are due to interest on that amount. Dr. Pirouzian did not provide any record citations to support this information.

The court's order denying Dr. Pirouzian's petition stated on page four that Dr. Pirouzian "received a total of approximately $10,000 in disability payments to which

Insurance, Dr. Pirouzian said that he had repaid some of the disability payments and was willing to pay the remaining sum.

In June 2011, Dr. Pirouzian left Kaiser and, the following month, began a research fellowship with Gavin Herbert Eye Institute at the University of California, Irvine.

In November 2011, the San Diego County District Attorney charged Dr. Pirouzian with two counts of insurance fraud. (Pen. Code, § 550, subds. (a)(1) & (b)(1).[2] A third count was later added: willfully delaying a public officer in the discharge of official duties, a misdemeanor, under Penal Code section 148, subdivision (a)(1).[3] After the criminal complaint was filed, Dr. Pirouzian paid Northwestern Mutual $10,700.

As part of a plea agreement, Dr. Pirouzian pled guilty to the misdemeanor count and the District Attorney dismissed the insurance fraud counts. Dr. Pirouzian agreed to pay $5,000 in restitution to the Department of Insurance. The plea agreement and the court's minutes indicated that full restitution had been paid to Northwestern Mutual. The trial court placed Dr. Pirouzian on three years probation, which was later reduced to 60 days. The court subsequently expunged the conviction.

he was not entitled," and on page nine that Dr. Pirouzian "received $18,633 in overpayments." The court's order did not cite to the record as to the latter fact.

[2] Subdivision (a) of Penal Code section 550 provides: "It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following: [¶] (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance."

Subdivision (b) of Penal Code section 550 provides: "It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following: [¶] (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

[3] Subdivision (a)(1) of Penal Code section 148 provides in pertinent part: "Every person who willfully resists, delays, or obstructs any public officer, peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

4

Dr. Pirouzian did not report his conviction to the Board based on the advice of his counsel that he was not required to do so.

Dr. Pirouzian completed his fellowship with the Gavin Herbert Eye Institute in July 2012, then worked as a consultant for Tayani Institute through March 2013. He thereafter worked at a hospital in Saudi Arabia.

In February 2013—more than five years after his misrepresentations came to light—the Board filed an accusation alleging four causes for discipline based on: (1) acts of dishonesty or corruption (cause 1); (2) conviction of a crime (cause 2); (3) failure to report a conviction (cause 3); and (4) unprofessional conduct (cause 4).[4] A hearing took place over four days in December 2013. During that hearing, Dr. Pirouzian admitted that he acted dishonestly and intended to do so. He explained that he lied about his employment with Kaiser in order to continue the lie that he was disabled and to keep his employment options with CSSD open. He also admitted that he always knew that concealing his Kaiser employment was wrong, and that his dishonesty was motivated by self-interest.

The ALJ found that although Dr. Pirouzian testified that he was ashamed and remorseful, he expressed no regret for the victims of his dishonesty; his "most evident concern was the impact [the] disciplinary action might have on his future academic and employment opportunities." The ALJ also noted "Dr. Pirouzian's ability to plan ahead and blame others for his own misconduct" and that he "exploited his mental condition to get his way."

Dr. David Sheffner, a psychiatrist retained by the Board, and Dr. Martin Williams, a psychologist retained by Dr. Pirouzian, testified as to Dr. Pirouzian's mental state and motivations during the relevant time. Dr. Sheffner opined that Dr. Pirouzian's actions reflected logical thinking and a cognitive strategy designed to hide his employment with

---

[4] The accusation also alleged a "First Cause for Fine," based on the alleged failure to report to the Board within the time required by Business and Professions Code section 802.1 the bringing of a criminal information or his misdemeanor conviction. The ALJ rejected this cause because Dr. Pirouzian's failure to provide the required report was based on "the mistaken advice of a licensed attorney."

Kaiser and to preserve the possibility of returning to CSSD. Dr. Williams testified that Dr. Pirouzian " 'was thinking poorly and was in a confused mental state.' " He believed that Dr. Pirouzian was motivated to preserve his employment option at CSSD; he was not motivated by financial gain.

The ALJ determined that there was cause to discipline Dr. Pirouzian based on causes 1, 2, and 4, but no such cause under cause 3. Dr. Pirouzian, the ALJ explained, "engaged in a pattern of dishonest behavior between July 2007 and October 2007 that included, but was not limited to, receiving disability insurance benefits from Northwestern Mutual by representing that he was unemployed when that was not the case," and that such "dishonesty is substantially related to the qualifications, functions and duties of a physician and surgeon." The ALJ further found that his conviction of willfully delaying a public officer in the discharge of official duties was "substantially related to the qualifications, functions and duties of a physician and surgeon."

The ALJ noted that there was no evidence that Dr. Pirouzian's dishonesty caused harm to any patient.

In imposing the discipline of revocation, the ALJ stated: "Not enough time has passed since the most recent misconduct to conclude that Dr. Pirouzian is rehabilitated to the extent that it would be in the public interest to permit him to retain his certificate, even on a probationary basis. Given all that has happened the only measure of discipline that will protect the public is the outright revocation of Dr. Pirouzian's medical certificate."

The Board adopted the ALJ's decision and revoked Dr. Pirouzian's license. Dr. Pirouzian filed a motion for reconsideration, which the Board denied.

Dr. Pirouzian sought review in the superior court on the grounds that the ALJ was biased, the Board's decision was "irrational" and "internally inconsistent," and that revocation was grossly disproportionate to his actions. The court denied the petition. Regarding revocation of Dr. Pirouzian's license, the court stated that "the ALJ was entitled to rely on [Dr.] Pirouzian's repeated dishonesty as 'very serious,' and couple the

misconduct with [Dr.] Pirouzian's lack of remorse and less than candid testimony to conclude that license revocation was required."

Dr. Pirouzian filed a petition for a writ of mandate in this court pursuant to Business and Professions Code section 2337. We stayed the revocation of his license pending resolution of the petition and informed the parties that we were considering the issuance of a peremptory writ in the first instance (see *Palma*, *supra*, 36 Cal.3d 171). We requested briefing on two issues: (1) Given the facts and circumstances of this case, was it a manifest abuse of discretion for the Board to impose any penalty? (2) If it was not a manifest abuse of discretion for the Board to impose a penalty, was it a manifest abuse of discretion to impose as harsh a penalty as revocation of Dr. Pirouzian's license? Each side filed the requested briefs.

## DISCUSSION

I.      *Applicable Legal Principles and Standards of Review*

The Board is authorized to discipline a medical licensee who commits "unprofessional conduct." (Bus. & Prof. Code, § 2234.)[5] Unprofessional conduct includes: (1) the "commission of any act involving dishonesty . . . that is substantially related to the qualifications, functions, or duties of a physician and surgeon"; (2) the "conviction of any offense substantially related to the qualifications, functions, or duties of a physician and surgeon"; and (3) "conduct which breaches the rules or ethical code of a profession, or conduct which is unbecoming a member in good standing of a profession." (§ 2234, subd. (e); § 2236, subd. (a); *Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 575.)

When a licensee is found to have committed unprofessional conduct, the Board has the authority to discipline the licensee with a public reprimand (which may include a requirement that the licensee complete relevant educational courses), probation, suspension, or revocation of the physician's license. (§ 2227, subd. (a).) The maximum discipline—revocation—deprives the licensee of a "fundamental right[]" to practice his

---

[5] All subsequent statutory references are to the Business and Professions Code unless otherwise indicated.

7

or her profession (see *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 (*Bixby*); cf. *Meyer v. Nebraska* (1923) 262 U.S. 390, 399 [due process protects the right of individuals "to engage in any of the common occupations of life"]), and is considered a "drastic penalty" (*Cooper v. State Bd. of Medical Examiners* (1950) 35 Cal.2d 242, 252).   If the Board decides to revoke a license, it may stay the revocation subject to specified terms and conditions.  (See *Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551, 563-564; Medical Board of California Manual of Model Disciplinary Orders and Disciplinary Guidelines (11th ed. 2011) pp. 9 & 27.)

In exercising its disciplinary authority, the Board is required to give "highest priority" to "[p]rotection of the public."  (§ 2229, subd. (a); see *Landau v. Superior Court* (1998) 81 Cal.App.4th 191, 218 (*Landau*).)  Priority shall also be "given to those measures, including further education, restrictions from practice, or other means, that will remove" the physician's "demonstrated deficiencies in competency."  (§ 2229, subd. (c).)  In addition, the Board "shall, wherever possible, take action that is calculated to aid in the rehabilitation of the licensee, or where, due to a lack of continuing education or other reasons, restriction on scope of practice is indicated, to order restrictions as are indicated by the evidence."  (*Id.*, subd. (b).)  As one court stated, the object of the Board's discipline "is not to punish" the physician, but "rather, 'to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from . . . a lack of honesty and integrity.'  [Citation.]  In short, the purpose of discipline is to make the [physician] a better physician."  (*Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 473 (*Windham*), quoting *Furnish v. Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 331.)

Review of a Board decision is by petition for administrative mandamus in the superior court.  (Code Civ. Proc., § 1094.5; see *Landau*, *supra*, 81 Cal.App.4th at p. 198.)  The trial court is required to review the Board's decision to determine whether the Board "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."  (Code Civ. Proc., § 1094.5,

subd. (b).) "Abuse of discretion is established if the [Board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*)

When, as here, the Board's decision affects a petitioner's fundamental rights, the trial court exercises its independent judgment based on the administrative record. (*Bixby*, *supra*, 4 Cal.3d at p. 143.) Although the "starting point" for the trial court is a presumption of correctness concerning the Board's decision, the trial court "is free to substitute its own findings after first giving due respect to the agency's findings." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817-818.)

Appellate review of a superior court's decision is by a petition for an extraordinary writ. (§ 2337; *Sela v. Medical Bd. of California* (2015) 237 Cal.App.4th 221, 230.) We review challenges to the court's factual findings to determine whether the findings are supported by substantial evidence. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627.) Pure questions of law and "issues regarding the nature or degree of an administrative penalty are given a de novo review, the latter being examined to determine whether the administrative agency abused its discretion." (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851; see also *Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46 [appellate court gives no deference to trial court's determination of the discipline the agency imposed].) An abuse of discretion may be found if, under all the facts and circumstances, "the penalty imposed was . . . clearly excessive." (*Szmaciarz v. State Personnel Bd.* (1978) 79 Cal.App.3d 904, 921.)

II.     *Unprofessional Conduct*

Here, Dr. Pirouzian does not dispute the ALJ's findings that he committed numerous acts of dishonesty in 2007 with respect to his employment status and disability insurance benefits. Such acts of dishonesty can be the basis for disciplinary actions if they were related to his fitness or competence to practice medicine. (See *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788; *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 769 (*Griffiths*); *Foster v. Board of Medical Quality Assurance* (1991) 227 Cal.App.3d 1606, 1610.) Although there is no evidence that

9

Dr. Pirouzian was dishonest or acted improperly with respect to any patient, the Board may conclude that intentional dishonesty, even toward persons outside the practice of medicine, relates to the qualifications for practicing medicine and can be the basis for imposing discipline. (See, e.g., *Matanky v. Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 301-302 (*Matanky*); *Windham*, *supra*, 104 Cal.App.3d at pp. 469-470.) As stated in *Griffiths*, although a "physician who commits income tax fraud, solicits the subornation of perjury, or files false, fraudulent insurance claims has not practiced medicine incompetently[,] that physician has shown dishonesty, poor character, a lack of integrity, and an inability or unwillingness to follow the law, and thereby has demonstrated professional unfitness meriting license discipline." (*Griffiths*, *supra*, 96 Cal.App.4th at pp. 771-772.) The ALJ could, therefore, reasonably conclude that Dr. Pirouzian's series of intentional misrepresentations to his psychiatrist, his employer, his disability insurance carrier, and the EDD are substantially related to the qualifications for practicing medicine.

III.    *The Discipline*

Dr. Pirouzian contends that revoking his license to practice medicine was excessive and an abuse of discretion. We agree.

Although the Board has discretion in determining the discipline to impose for unprofessional conduct, such discretion " ' "is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action." ' [Citations.]" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.) Here, the Board's discretion is subject to the Legislative mandate that the Board's highest priority be protection of the public; and, secondarily, discipline should "aid in the rehabilitation of the licensee." (§ 2229, subds. (a) & (b).) Punishment is not a goal. (*Windham*, *supra*, 104 Cal.App.3d at p. 473.)

As the ALJ noted, the Board's Medical Practice Regulations provide the following criteria for determining whether a physician has been rehabilitated: the nature and severity of the acts or offenses; the total criminal record; the time that has elapsed since commission of the acts or offenses; whether the licensee has complied with any terms of

10

parole, probation, restitution or any other sanctions lawfully imposed against the licensee; evidence of expungement; and evidence of rehabilitation. (Cal. Code Regs., tit. 16, § 1360.1.)

In this case, the Board's imposition of the maximum discipline of revoking Dr. Pirouzian's license to practice medicine is inconsistent with these priorities because it was not necessary to protect the public and did nothing to help make Dr. Pirouzian "a better physician." Dr. Pirouzian's dishonest acts, while serious, were focused on his efforts to obtain disability insurance benefits and preserve the possibility of returning to work at CSSD. Significantly, there is no evidence that his dishonesty involved or affected the treatment or care of any patient, or the billing of clients. His probation for his misdemeanor conviction was reduced from three years to 60 days, and the conviction was ultimately expunged. The amount of disability payments he received based upon his fraud was relatively small, and he eventually made full restitution to Northwestern Mutual (albeit not until he was charged with a crime).

Dr. Pirouzian's acts of dishonesty took place over a discrete period of several months in 2007, during a period of time when he was diagnosed with depression. Prior to and since that time, there was and has been nothing (so far as the record discloses) to indicate that Dr. Pirouzian behaved unprofessionally in any way. Indeed, his record is otherwise unblemished. After his series of related falsehoods were discovered in late 2007, he continued his work as a physician and medical research fellow without incident. As the ALJ noted in 2014, "six years have passed since the last act of dishonesty." There is nothing in the record to suggest that Dr. Pirouzian would repeat his dishonest conduct or to indicate that he is now a danger to the public.

Without diminishing the seriousness of Dr. Pirouzian's conduct, our review of the entire record, in light of the applicable criteria and legislative priorities, compels the conclusion that outright revocation of Dr. Pirouzian's license was unnecessary to protect the public and contrary to the goal of making him "a better physician." (*Windham*, *supra*, 104 Cal.App.3d at p. 473.) The discipline was excessive and, therefore, an abuse of discretion.

11

Two cases upon which the Board relies are instructive and distinguishable. In *Matanky*, *supra*, 79 Cal.App.3d 293, the Board revoked the medical license of a physician who had been convicted of 39 counts of Medicare fraud arising from the physician's fraudulent statements concerning services to 13 convalescent hospital patients. (*Id*. at pp. 297-298.) The revocation was not an abuse of discretion, the court explained, because although the federal government, which paid the fraudulent claims, "was not a patient," it "was nonetheless a 'client' in the professional practice of Matanky. He also defrauded the patient [because] the federal government only pays on behalf of the patient." (*Id*. at p. 306.) In contrast to the physician's conviction of 13 counts of Medicare fraud in *Matanky*, Dr. Pirouzian was convicted of one misdemeanor count, which was unrelated to Medicare or client billings and ultimately expunged. Even if Dr. Pirouzian's actions constituted insurance fraud, it cannot be said, as it was in *Matanky*, that he "defrauded the patient." (*Ibid.*)

In *Windham*, *supra*, 104 Cal.App.3d 461, the physician was convicted of two counts of federal tax fraud. The total tax deficiency was about $65,000. The Board found him guilty of unprofessional conduct and ordered his license revoked, but stayed the revocation and placed him on probation for three years, conditioned upon his performance of professional services for a community health institution. (*Id*. at pp. 464, 467-468, 473.) The court upheld the disciplinary order and rejected the physician's argument that the probation condition "was too severe." (*Id*. at p. 473.) The "charitable work," the court explained was "right in line with the purpose of the proceedings below." (*Id*. at pp. 473-474.) Here, by contrast, although Dr. Pirouzian's dishonest acts are no more egregious—and arguably far less egregious—than the tax fraud in *Windham*, the career-ending revocation *without a stay* imposed on Dr. Pirouzian is significantly more severe than the revocation and stay imposed in *Windham*. (See also *Shea v. Board of Medical Examiners*, *supra*, 81 Cal.App.3d at p. 570 [where physician made sexually-explicit remarks, unrelated to diagnosis or treatment, to patients he had hypnotized, Board suspended his license and gave him the opportunity to resume medical practice after submitting to a psychiatric examination, subject to five years probation].)

12

Finally, our conclusion that the revocation constitutes an abuse of discretion is supported by the ALJ's statements during the hearing and in his written findings that indicate the discipline was imposed for the improper purpose of punishing Dr. Pirouzian. During the hearing, the ALJ informed Dr. Pirouzian that his plea bargain was "a great deal," that his criminal defense "lawyer did a wonderful job," and that Dr. Pirouzian received "better treatment from the criminal justice system than virtually any man that has walked the streets of San Diego County since 1900." This sentiment was followed in the ALJ's proposed order, which states that Dr. Pirouzian obtained "extremely favorable treatment by the criminal justice system" and that the misdemeanor conviction was "not an accurate measure of his wrongdoing." These statements indicate that the ALJ believed that Dr. Pirouzian had not been sufficiently punished for his actions, and strongly suggest that the ALJ's disciplinary decision was improperly motivated by a desire to make up for the "[in]accurate" punishment Dr. Pirouzian received from the criminal justice system. This is inconsistent with purposes of a disciplinary proceeding that has as its object "not to punish" the physician. (*Windham*, *supra*, 104 Cal.App.3d at p. 473.)

For all the foregoing reasons, we conclude that the Board abused its discretion by revoking Dr. Pirouzian's license without staying the revocation.

13

## DISPOSITION

The petition is granted.  The trial court is directed to vacate its order denying Dr. Pirouzian's petition for administrative mandamus and to enter a new order granting the petition and commanding the Board to set aside its order revoking Dr. Pirouzian's license and to determine the discipline to be imposed in light of this opinion.

All parties shall bear their own costs.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

JOHNSON, J.

14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMIR PIROUZIAN, | B266015 |
| Petitioner, | (Los Angeles County Super. Ct. No. BS148788) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | CERTIFICATION AND ORDER FOR PUBLICATION |
| Respondent; | |
| MEDICAL BOARD OF CALIFORNIA, | |
| Real Party in Interest. | |

The opinion and order granting peremptory writ of mandate in the above-entitled matter filed June 29, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

ROTHSCHILD, P. J.              CHANEY, J.              JOHNSON, J.