Filed 12/10/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RADWA MOHAMED MOUSTAFA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BOARD OF REGISTERED NURSING,<br><br>    Defendant and Appellant. | A150266<br><br>(San Francisco City and County<br>Super. Ct. No. CPF-16-515166) |

Radwa Mohamed Moustafa applied for a license to be a registered nurse and, in the course of doing so, disclosed she had been convicted of four misdemeanors that were subsequently dismissed under Penal Code section 1203.4. The Board of Registered Nursing (Board) granted her a probationary license as a result of three of those convictions—two for petty theft and one for vandalism—and the conduct that gave rise to them. Moustafa opposed this restriction and filed a petition for a writ of administrative mandate in the trial court. The court granted the petition, relying on Business and Professions Code[1] section 480, subdivision (c) (section 480(c)), which bars a licensing board from denying a license "solely on the basis of a conviction that has been dismissed pursuant to Section 1203.4 . . . of the Penal Code."

On appeal, the Board contends that its decision must be upheld and the trial court erred by granting Moustafa's petition because (1) section 480(c) applies only when an applicant has a single dismissed conviction; and (2) even if section 480(c) did apply, Moustafa's license restriction was lawful because of the conduct underlying the

---

[1] All further statutory references are to the Business and Professions Code unless otherwise noted.

1

convictions. Although we reject many of the Board's arguments, we agree that until July 1, 2020, when recent legislation amending section 480 takes effect, the Board may deny or restrict a license based on the conduct underlying a dismissed conviction.[2] It may do so, however, only when the conduct independently qualifies as a basis for denying a license. Contrary to the Board's position, conduct does not necessarily so qualify merely because it involves some act—no matter how minor—of theft, dishonesty, fraud, or deceit. Instead, conduct so qualifies only if it substantially relates to the applicant's fitness to practice nursing. Applying this standard, we conclude that the Board could restrict Moustafa's license based on the conduct underlying the petty thefts, but not on the conduct underlying the vandalism. The trial court therefore erred in granting the petition, and we reverse.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

This case comes to us with an unusually sparse record. Although it is an appeal from an order granting a petition for a writ of administrative mandate, most of the administrative record was not filed in the trial court and is not a part of our appellate record. We therefore lack a full understanding of the procedural and factual history of the case. Nevertheless, we review the court's ruling on the merits because the Board does not contend that the record's inadequacy compels reversal and the appeal raises only questions of law.

From our limited record, we know that in September 2015 Moustafa applied for a license to be a registered nurse. In her application and an accompanying letter, she disclosed that she had been convicted of four misdemeanors: in 2006, she was convicted of petty theft under Penal Code section 484; in 2009, she was convicted of another count of petty theft and a count of vandalism under Penal Code section 594, subdivision (a);

_____

[2] As of July 1, 2020, section 480 will be amended to provide that an applicant cannot be denied a license "on the basis of any conviction, *or on the basis of the acts underlying the conviction*," if the conviction has been dismissed. (Assem. Bill No. 2138 (2017-2018 Reg. Sess.) § 4 (Assem. Bill No. 2138), italics added.)

2

and in 2010, she was convicted of driving without a license under Vehicle Code section 12500, subdivision (a). All four convictions were dismissed in 2013 under Penal Code section 1203.4.

In December 2015, the Board denied Moustafa's application. Moustafa appealed, and the Board initiated an administrative proceeding by filing a statement of issues in accordance with Government Code section 11504. The statement of issues identified four separate causes to deny the application, with each cause identifying one of the four convictions and the conduct underlying that conviction.

A hearing was held in April 2016 before an administrative law judge (ALJ). Moustafa presented a letter in which she reported being "embarrassed and ashamed for what [she had] done" and accepted "complete accountability." She also presented evidence that in the years since her last conviction, she had graduated from the University of California, Santa Cruz, been employed at a lab at the University of California, San Francisco, graduated with honors from the City College of San Francisco with an associate science degree in registered nursing, and volunteered as a driver for a nonprofit organization that delivers food to the needy. She also submitted professional reference letters and evidence that she had been offered a nursing job.

The ALJ first considered the convictions themselves and found that the 2006 and 2009 convictions for petty theft and the 2009 conviction for vandalism were substantially related to the practice of nursing but that the 2010 conviction for driving without a license was not. The ALJ concluded that the petty theft and vandalism convictions justified a restricted license, despite section 480(c)'s prohibition of reliance on a dismissed conviction to deny a license, because this prohibition applies only when an applicant has a single dismissed conviction.

The ALJ then considered the conduct underlying the convictions and determined that it constituted unprofessional conduct, independently justifying a restricted license. Both petty-theft convictions were for shoplifting from Macy's. The first time, Moustafa "attempted to switch the price tags on two items and was detained by store security while attempting to pay." The second time, "she 'stole a BCBG dress . . ., hid it in [her]

3

purse[,] and was detained as [she] attempted to walk out with the merchandise.' " Finally, she was convicted of vandalism after her "forcible removal" of a boot placed on her car for unpaid parking tickets. After the police contacted her, she returned the boot, which she was required to pay for because it was so damaged that it "appeared unusable."

After finding that a "registered nurse must be trustworthy and honest" and that Moustafa failed to provide "an understandable explanation for her criminal activity," the ALJ recommended that Moustafa be granted a license, subject to an immediate revocation and corresponding stay of that revocation while she was placed on probation for three years. The Board adopted the recommendation.

In July 2016, Moustafa challenged the Board's decision by filing a petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5. The Board opposed the petition and asked the trial court to take judicial notice of the statement of issues, the recommended decision, the final decision, and documents purportedly reflecting the legislative history of section 480(c).

The trial court issued a tentative decision in which it proposed denying Moustafa's petition without prejudice because of the absence of an administrative record. But it later changed course and decided to rule on merits of the petition because the Board had provided a copy of the administrative decision and only questions of law were at issue. The court then granted the Board's request for judicial notice and granted the petition. It concluded that section 480(c) "prevents the Board from relying on any conviction that has been dismissed pursuant to Penal Code section 1203.4, even, as in this case, where there have been multiple convictions so dismissed." In addition, it concluded that section 480(c) also "precludes the Board from separately relying on the conduct underlying any or all of the criminal convictions, as it would otherwise have been permitted to do," reasoning that "permitting the Board to deny or restrict licensure based on conduct underlying a conviction that has been dismissed . . . is inconsistent with and would render section 480[(c)] essentially meaningless." Judgment was entered in Moustafa's favor in October 2016, and the Board appealed.

4

II.

DISCUSSION

A.    *General Legal Standards.*

Section 480 identifies four grounds on which a board may deny a license regulated by the Business and Professions Code.[3] First, a license may be denied if the applicant has "[b]een convicted of a crime." (§ 480, subd. (a)(1).) Second, a license may be denied if the applicant has "[d]one any act involving dishonesty, fraud, or deceit with the intent to substantially benefit himself or herself or another, or substantially injure another." (§ 480, subd. (a)(2).) Third, a license may be denied if the applicant has "[d]one any act that if done by a licentiate of the business or profession in question, would be grounds for suspension or revocation of license" *and* "the crime or act is substantially related to the qualifications, functions, or duties of the business or profession for which application is made." (§ 480, subd. (a)(3)(A) & (B).) And fourth, a license may be denied if "the applicant knowingly made a false statement of fact that is required to be revealed in the application for the license." (§ 480, subd. (d).) The Board's determination of what level of discipline is appropriate if one of these grounds is satisfied "is a matter resting in [its] sound discretion." (*Hughes v. Board of Architectural Examiners* (1998) 68 Cal.App.4th 685, 692.)

Although section 480, subdivision (a)(1) (section 480(a)(1)) broadly authorizes a board to deny a license based on *any* criminal conviction, subdivisions (b) and (c) of the statute, which govern "[n]otwithstanding any other provisions of [the Business and Professions Code]," limit a board's ability to do so in certain circumstances. Under subdivision (b), if the conviction is for a felony and the applicant obtains a certificate of rehabilitation from the criminal court, or if the conviction is for a misdemeanor and the

---

[3] As we have mentioned, the Board actually granted Moustafa a license but then revoked it and stayed the revocation. The parties assume that section 480 applies not only when a board denies a license outright but also when it grants a restricted license. (See *Donley v. Davi* (2009) 180 Cal.App.4th 447, 451, 463-464.) Because the Board granted a restricted license, we need not decide whether it could deny a license outright under similar factual circumstances.

5

applicant meets the board's own rehabilitation criteria, the board cannot deny a license "solely on the basis" of the conviction. (§ 480, subd. (b).) And under subdivision (c), which became effective on January 1, 2015, the board cannot deny a license "solely on the basis" of any conviction that has been dismissed under Penal Code sections 1203.4 (section 1203.4), 1203.4a, or 1203.41.[4] (§ 480(c).) Section 1203.4, the statute that applies here, allows defendants who were convicted of a crime and then successfully completed probation to obtain a court order dismissing the conviction. (*People v. Lewis* (2006) 146 Cal.App.4th 294, 297.) With certain exceptions, such a dismissal releases a defendant "from all penalties and disabilities resulting from the offense of which he or she has been convicted."[5] (§ 1203.4.)

Here, the relevant facts involving the dismissals under section 1203.4 of the three convictions at issue and the underlying conduct that gave rise to those convictions are undisputed. Thus, the only issues before us are questions of law. (See *Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1200 (*Sulla*); *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132-133.)

" 'On questions of law arising in mandate proceedings, we exercise independent judgment.' " (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313.) Because "the trial and appellate courts perform the same function" in addressing such questions, "we apply our independent review without reference to the trial court's actions." (*Ibid.*) Thus, "it is a settled appellate principle that if a judgment is correct on any theory, [we] will affirm it regardless of the trial court's reasoning." (*Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1192-1193.)

---

[4] Throughout the opinion, we will refer to convictions dismissed under these provisions as "dismissed convictions."

[5] We agree with the Board that Moustafa's characterization of her convictions as having been "expunged" is misleading. " '[A] dismissal under section 1203.4 . . . is in no way equivalent to a finding of factual innocence . . . [and] "does not purport to render the conviction a legal nullity." ' " (*Skulason v. California Bureau of Real Estate* (2017) 14 Cal.App.5th 562, 568.) Rather, the statute " 'simply authorizes a court to grant relief to individuals who successfully complete the terms of probation by mitigating some of the consequences of conviction.' " (*Ibid.*)

**B.** *The Board Improperly Relied on Moustafa's Dismissed Convictions as a Basis for License Restriction.*

The Board claims that it properly relied on the dismissed convictions to restrict Moustafa's license because section 480(c)'s prohibition applies only when an applicant has a single dismissed conviction. We disagree.

" ' "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 751.)

The Board argues that the "plain text" of section 480(c) "is limited to only one dismissed conviction." We believe, to the contrary, that the plain and more natural reading of the provision is that the phrase "a conviction that has been dismissed" applies to each dismissed conviction an applicant may have, regardless of whether the applicant has one individual dismissed conviction or a collection of such individual dismissed convictions. It makes sense for the phrase to be formulated in the singular, because every dismissal relates to a single conviction. (See Pen. Code, §§ 1203.4, subd. (a), 1203.4a, subd. (a), 1203.41, subd. (a)(1).) Since section 480(c) prevents the Board from denying a license solely on the basis of a singular dismissed conviction, it logically follows that the provision also prohibits the denial of a license based solely on a collection of such singular dismissed convictions. Nor are we swayed by the Board's argument that the "*combination* of [the phrase] 'a conviction' with the limiting word 'solely' confirms that the use of singular was intentional." The word "solely" is sensibly understood as reinforcing the principle that the Board retains authority, notwithstanding

7

section 480(c)'s restrictions regarding dismissed convictions, to deny applicants licenses based on other grounds, including non-dismissed convictions.

Moreover, the Board does not explain why, if the singular article in section 480(c) should be interpreted to expand its licensing authority, singular articles in other licensing provisions should not be similarly interpreted to restrict that authority. Would the Board seriously contend that it cannot deny a license because an applicant was convicted of several crimes instead of "*a* crime" (§ 480, subd. (a)(1), italics added) or take disciplinary action against a licensee because the licensee is guilty of several offenses rather than "*a* felony or any offense substantially related" to the profession (§ 2761, subd. (f), italics added), aided several criminal abortions rather than "*a* criminal abortion" (§ 2761, subd. (c), italics added), or made several false statements rather than *a* "false statement" in connection with an application (§ 2761, subd. (e))? We think it is clear that in all of these instances, the Board has the authority to take action against an applicant or licensee who has engaged in a number of these acts, just as it has the ability to take action against such a person who has engaged in one of these acts. And just as these statutory provisions plainly authorize the Board to deny an application or discipline a licensee for multiple acts, section 480(c) plainly prohibits it from denying an application based solely on multiple dismissed convictions.

The Board also insists that section 480(c) applies only to applicants who have a single dismissed conviction in light of another statutory provision: section 480(a)(1). That provision, which was left unchanged when section 480(c) was enacted, confers express authority on boards to deny licenses based on applicants' convictions, and it explains that "[a]ny action that a board is permitted to take following the establishment of a conviction may be taken . . . *irrespective of a subsequent order*" dismissing the conviction. (§ 480(a)(1), italics added.) The Board argues that this italicized phrase would have no meaning if section 480(c) is interpreted to include more than one dismissed conviction. Again, we disagree.

By its plain terms, section 480(a)(1) does nothing more than clarify that a board can deny a license, or take any other "action that a board is permitted to take," based on a

8

criminal conviction, and that this denial or other action is valid even if, at a "subsequent" time, the conviction is dismissed. In other words, section 480(a)(1) refers to a board's power to deny licenses based on convictions that have not been dismissed at the time of the license consideration, while section 480(c) refers to a board's power to deny licenses based on convictions that have already been dismissed at the time of the license consideration. Nothing in section 480(a)(1) affects, much less trumps, section 480(c)'s directive prohibiting boards from denying "a license solely on the basis of a conviction that has been dismissed."

Our interpretation of section 480(c) to apply to applicants who have more than one dismissed conviction also comports with section 16. This statute declares that throughout the Business and Professions Code "[t]he singular number includes the plural, and the plural the singular." The "a" in section 480(c)'s phrase "a conviction that has been dismissed" is a grammatical article, and section 16 applies in construing the phrase because the phrase refers to a single number—one dismissed conviction. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 464-465 [assuming that a statute directing that " '[t]he singular number includes the plural' " applies to grammatical articles].) And even if grammatical articles fell outside the meaning of section 16's reference to a "singular number," section 16 at the very least reflects a legislative intent to discourage rigid interpretations of singular usages.

The Board cites two decisions that it claims demonstrate "these 'singular includes the plural' provisions," which are also found in other codes, "must be applied only carefully." In *People v. Navarro* (2007) 40 Cal.4th 668, the Supreme Court addressed whether Penal Code sections 1260 and 1181, subdivision 6 permitted an appellate court to modify a judgment to reflect more than one lesser included offense if the court reversed a single conviction for insufficient evidence. (*Navarro*, at p. 671.) The Supreme Court concluded that the singular usage of "crime" and "offense" in the statutes at issue should not be interpreted to include the plural, because doing so would "overthrow long-established principles of law" and "run[] counter to . . . the legislative purpose of the statutory scheme." (*Id.* at p. 680.)

Similarly, in *People v. Kunitz* (2004) 122 Cal.App.4th 652, the Third District Court of Appeal, after acknowledging the "general rule[] that 'the singular number includes the plural,' " concluded that the rule was inapplicable to the statute at issue because there were compelling indications that the Legislature did not intend for the singular usage to include the plural. (*Id.* at pp. 655-656.) Not only did the provision at issue purposely differentiate between singular and plural usages, other parts of the statute reflected a legislative intent for the singular to exclude the plural. (*Ibid.*)

Here, in contrast, there are no such indications that the Legislature intended section 480(c) to apply only to applicants who have no more than a single dismissed conviction. Although we need not resort to the legislative history of the provision because its language is clear, the legislative materials in the record disclose nothing suggesting an intent to limit section 480(c) as the Board proposes.[6] The Board points to legislative comments that the adoption of section 480(c) "will not affect a board's ability to deny a license based on other convictions or arrests that are part of the person's criminal record, or other acts that a person has committed. This bill will only prevent boards from presuming that an applicant has not been rehabilitated based only on a conviction that has been dismissed by a court, and using that as the sole reason for denying a license." These comments reflect the uncontroversial points that section 480(c) does not affect a licensing authority's ability to deny licenses based on "other convictions"—i.e., non-dismissed ones—or based on acts that provide separate grounds for the denial of the license, such as those section 2761 identifies. If anything, the one thing clear in the legislative materials is that section 480(c) was "designed to reduce employment barriers for people with criminal records who have been

_____

[6] In reaching this conclusion, we do not rely on a December 2016 letter from Assemblymember Rob Bonta addressing the legislative intent behind section 480(c), which Moustafa attached to her brief.

10

rehabilitated," a goal that is advanced by interpreting the provision to apply to applicants who have more than one dismissed conviction.[7]

Finally, we are not persuaded by the Board's argument that we should give significant weight to its interpretation of section 480(c). This provision concerns a subject area—the effect of dismissed convictions on applicants—in which the Board has no particular expertise. (See *Styrene Information & Research Center v. Office of Environmental Health Hazard Assessment* (2012) 210 Cal.App.4th 1082, 1100 [no deference where agency in question has no particular interpretive advantage over the courts].) And even if the Board did have such expertise, an "agency's interpretation is [but] ' "one of several interpretive tools that may be helpful. In the end, . . . '[the court] must . . . independently judge the text of the statute.' " ' " (*Azusa Land Partners v. Department of Industrial Relations* (2010) 191 Cal.App.4th 1, 14.) Ultimately, we cannot accept the Board's interpretation of section 480(c) because it is contrary to the provision's plain language and purpose.

C. *Section 480(c) Does Not Currently Prohibit the Board from Relying on Conduct Underlying a Dismissed Conviction to Restrict or Deny a License.*

The Board also claims that even if section 480(c) prevents it from relying on multiple past dismissed convictions to restrict or deny a license, the trial court incorrectly concluded that the statute also prevents it from relying on the *conduct* underlying those convictions. We agree that until July 1, 2020, when Assem. Bill No. 2138 goes into effect, the Board may rely on conduct underlying dismissed convictions so long as that conduct independently qualifies as a basis for denying a license.

We begin by accepting, somewhat reluctantly, that the statement of issues provided Moustafa with sufficient notice that the Board sought to deny her a license

---

[7] For the same reason, we reject the argument that applying section 480(c) to applicants with multiple dismissed convictions impairs the Board's ability to protect the public. This concern was addressed by the Legislature in limiting the statute's reach to offenders who are sufficiently rehabilitated to obtain dismissal of their convictions. Also, as we explain further below, under current law the Board is not categorically precluded from relying on the conduct underlying dismissed convictions to deny a license.

11

based not only on her dismissed convictions but also on the conduct underlying them. The reason for our reticence is that the heading of each cause was "Conviction of Substantially Related Crime," and each cause alleged that Moustafa's application was "subject to denial . . . in that [she] was convicted of a crime substantially related to the duties, functions, or qualifications of a registered nurse." Although the causes also briefly described the conduct underlying the offenses, nothing in the text of the allegations stated that the conduct itself justified a license denial or restriction. A reasonable recipient of the statement of issues would not have easily understood that the Board sought to deny the license on the basis of the conduct underlying the dismissed convictions.

Nevertheless, each cause identified as authority not only section 480(a)(1), which provides for denial based on a conviction itself, but also section 480, subdivision (a)(3) (section 480(a)(3)), which provides for denial based on acts substantially related to a profession that would be grounds for discipline if the applicant already had a license. In turn, each cause specified that section 480(a)(3) constituted authority by reference to section 2761, subdivision (a) (section 2761(a)), which authorizes the Board to impose discipline for "[u]nprofessional conduct."[8] The identification of this authority provided technical notice that the Board sought to deny a license on the basis of the conduct underlying the convictions. And there is no dispute that the ALJ relied on some of this conduct to conclude that Moustafa should receive a restricted license.

Turning to the merits, we agree with the Board that, contrary to the trial court's determination otherwise, section 480(c) does not currently prohibit it from considering

---

[8] Each cause also specified that section 480(a)(3) constituted authority for license denial by reference to section 2761, subdivision (f), under which the Board can impose discipline for "[c]onviction of a felony or of any offense substantially related to the qualifications, functions, and duties of a registered nurse, in which event the record of conviction shall be conclusive evidence thereof." The Board does not suggest that its reliance on this statutory ground to deny a license should be analyzed any differently than the broader ground under section 480(a)(1) for conviction of "any crime," and we therefore confine our discussion to whether the license restriction was justified because her underlying conduct constituted "unprofessional conduct."

the conduct underlying a dismissed conviction. The provision's plain language prohibits reliance on only a dismissed "*conviction*" to deny a license (italics added), and the applicable laws make clear that a license may be denied based on acts as well. Consistent with this distinction, courts have treated convictions and the conduct underlying them as separate bases for denying an application or imposing discipline.

*Sulla* is illustrative. In that case, our colleagues in Division Five of this court addressed whether the Board could take disciplinary action against a licensed nurse based on his conduct of driving drunk and his resulting criminal conviction. (*Sulla*, *supra*, 205 Cal.App.4th at p. 1201.) In holding that section 2762 authorized discipline for alcohol-abuse-related convictions and conduct without the need for "a separate determination of a nexus or relationship to the licensee's professional fitness," the court rejected the contention that section 490, subdivision (b)—which prohibits a board from disciplining a licensee "for conviction of a crime" unless the crime is "substantially related" to the relevant profession—required such a separate determination. (*Sulla*, at pp. 1201-1202, 1204-1205.) But even if section 490, subdivision (b) *had* barred the Board from relying on the licensee's conviction to discipline him, the licensee had also been disciplined based on his conduct. And because that provision "applies only to disciplinary actions that are based on a criminal conviction" and "does not on its face apply" to unprofessional conduct, the Board's decision could be affirmed based on the conduct ground alone. (*Sulla*, at p. 1206.) *Sulla* supports our conclusion that section 480(c), which likewise applies on its face only to convictions, does not prohibit the Board from relying on the conduct underlying convictions to deny a license.

The trial court found that section 480(c) would be "essentially meaningless" if interpreted to permit the Board to restrict licenses based on conduct underlying dismissed convictions. We cannot agree. Under section 480(a)(1), a board can deny a license to an applicant who has "[b]een convicted of a crime" based on no more proof than the conviction itself. (See § 493 [in licensing proceedings "the record of conviction of [a] crime shall be conclusive evidence of the fact that the conviction occurred, but only of that fact"].) In contrast, a board cannot deny a license to an applicant for other reasons,

13

including because of the conduct leading to a conviction, without proof of additional facts. We see no obvious inconsistency in precluding reliance on dismissed convictions themselves while still permitting reliance on conduct underlying those convictions that a board can actually prove. Until Assem. Bill No. 2138 becomes operative on July 1, 2020, boards may rely on conduct underlying dismissed convictions when that conduct independently qualifies as a basis for denying a license.

We recognize that Assem. Bill No. 2138 has an anomalous effect in that it will bar the Board from relying on conduct underlying dismissed convictions to deny or restrict a license, but it will not bar the Board from relying on identical conduct (so long as it independently qualifies as a basis for denying a license) that did not result in a criminal conviction. In a sense, applicants will be worse off when they are not convicted of a crime than when they are convicted and obtain a dismissal. In light of this anomaly, we expect that when the Board considers appropriate sanctions based on applicants' conduct, it will assess the circumstances of the conduct thoughtfully, reject categorical assumptions, and take to heart the Legislature's clear intent in enacting Assem. Bill No. 2138 to reduce licensing and employment barriers for people who are rehabilitated.

14

D.     *The Board Could Restrict Moustafa's License on the Basis of the*
        *Shoplifting Conduct Underlying Two of the Dismissed Convictions.*

Our determination that the Board is not barred from relying on the conduct underlying dismissed convictions to deny a license does not necessarily mean that it properly found that Moustafa's underlying conduct was "unprofessional conduct" under section 2761(a) that "substantially related" to nursing under section 480, subdivision (a)(3)(B).[9] This issue also presents legal questions that we review de novo. (See *Sulla*, *supra*, 205 Cal.App.4th at pp. 1204-1205; *Krain v. Medical Board* (1999) 71 Cal.App.4th 1416, 1424.)

1.     "Unprofessional conduct."

We begin our analysis by reviewing the relevant statutory and regulatory provisions. Section 2761(a) provides that "[u]nprofessional conduct . . . includes, but is not limited to, the following":

(1)     Incompetence, or gross negligence in carrying out usual certified or licensed nursing functions.

(2)     A conviction of practicing medicine without a license in violation of Chapter 5 (commencing with Section 2000) . . . .

(3)     The use of advertising relating to nursing which violates Section 17500.

(4)     Denial of licensure, revocation, suspension, restriction, or any other disciplinary action against a health care professional license or certificate by another state or territory of the United States, by any other government agency, or by another California health care professional licensing board.

Other specific acts are defined as "unprofessional conduct" in various other statutes and regulations. Under section 2762, a variety of drug- and alcohol-related misconduct, including the use of controlled substances or alcoholic beverages in a sufficiently dangerous manner, is "unprofessional conduct." Under California Code of

_____

[9] We gave the parties an opportunity to submit supplemental briefing on this issue, and only the Board did so.

15

Regulations, title 16, section 1441, various acts related to failing to cooperate with the Board in providing information are "unprofessional conduct." And statutes that apply to other professions in addition to nursing define various misconduct as "unprofessional conduct," including sections 726 (sexual misconduct), 733 (interference with patient's access to prescribed drug or device), and 810 (insurance fraud in connection with professional activities). None of the conduct at issue here qualifies as any of the specific types of unprofessional conduct listed in either section 2761(a) or any of these other statutes or regulations.

We agree with the Board that "[a]dditional forms of conduct may be deemed unprofessional" because section 2761(a) provides that unprofessional conduct " 'is not limited to' " the examples given. (See *Gillis v. Dental Bd. of California* (2012) 206 Cal.App.4th 311, 319-320 [interpreting same phrase in dental statute to mean that "unlisted conduct may be 'unprofessional conduct' subject to discipline"], disapproved on other grounds by *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1116, fn. 2.) But while section 2761(a) reaches beyond the examples of unprofessional conduct it identifies, its precise scope is left unstated.

We are not aware of any published decision addressing the generic meaning of "unprofessional conduct" under section 2761(a), but other decisions have interpreted the phrase as used in statutes governing other professions. In *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 (*Morrison*), the Supreme Court held that the term "unprofessional conduct" under former Education Code section 13202 covered only that conduct "which indicates unfitness to teach." (*Morrison*, at p. 225.) The Court concluded that the term had to "depend upon, and thus relate to, the occupation involved" since "the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval." (*Id.* at pp. 225, 227.)

In *Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, the Third District Court of Appeal interpreted former section 2361. As does section 2761(a), that statute defined "unprofessional conduct" to include but not be limited to certain types of

conduct. (*Shea*, at p. 575.) Citing *Morrison*, *Shea* observed that this language did "not mean . . . that an overly broad connotation is to be given the term 'unprofessional conduct;' it must relate to conduct which indicates an unfitness to practice medicine." (*Ibid.*) Specifically, the court interpreted the term to mean "that conduct which breaches the rules or ethical code of a profession, or conduct which is unbecoming a member in good standing of a profession." (*Ibid.*) Subsequently, Division Three of this court cautioned that *Shea*'s language about " 'conduct which breaches the rules or ethical code of a profession' " was "at best dicta or at least an overstatement of the applicable law," explaining that the touchstone was " 'unfitness to practice medicine.' " (*Thorburn v. Department of Corrections* (1998) 66 Cal.App.4th 1284, 1289-1291.)

2.     "Substantially related."

"[T]he Board's authority to take disciplinary action against a licensed nurse derives from the state's inherent power to regulate the use of property to preserve public health, morals, comfort, order[,] and safety." (*Sulla*, *supra*, 205 Cal.App.4th at p. 1206.) The substantial-relationship requirement stems from the due process principle that "a statute constitutionally can prohibit an individual from practicing a lawful profession only for reasons related to his or her fitness or competence to practice that profession." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788.) To satisfy this standard, " '[t]here must be a logical connection of licensees' [or applicants'] conduct to their fitness or competence to practice the profession or to the qualifications, functions, or duties of the profession in question.' " (*Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 769.)

Section 480 itself does not define what it means for conduct to be "substantially related to the qualifications, functions, or duties of the business or profession for which application is made." (§ 480(a)(3)(B).) Instead, section 481 requires boards to "develop criteria to aid [them], when considering the denial, suspension[,] or revocation of a license, to determine whether a crime or act is substantially related to the qualifications, functions, or duties of the business or profession it regulates." To comply with this directive, the Board adopted California Code of Regulations, title 16, section 1444

17

(section 1444), which provides that "[a] conviction or act shall be considered to be substantially related to the qualifications, functions[,] or duties of a registered nurse if to a substantial degree it evidences the present or potential unfitness of a registered nurse to practice in a manner consistent with the public health, safety, or welfare." The regulation lists examples of such convictions or acts, including "[t]heft, dishonesty, fraud, or deceit." (§ 1444, subd. (c).)

### 3. The relationship between unprofessional conduct and conduct substantially related to the practice of nursing.

In ruling that the conduct underlying three of the convictions here justified issuing Moustafa a restricted license, the ALJ focused on the requirement that the conduct be substantially related to the practice of nursing under section 480(a)(3). Without making additional factual findings beyond those about the convictions themselves, the ALJ determined that Moustafa's "two acts of theft" were "substantially related by regulation" to nursing, citing section 1444, subdivision (c). The ALJ also determined that Moustafa's "removal and damage of the boot lawfully placed on her car" were substantially related to nursing because they "evidence[d] unfitness to practice consistently with the public health, safety[,] or welfare." Based on these determinations, the ALJ concluded that "cause for denial based upon acts of unprofessional conduct as provided in . . . sections 480[(a)(3)] . . . and 2761[(a)] . . . was established." In other words, the ALJ assumed that a finding of a substantial relationship between the conduct and nursing also established that the conduct was "unprofessional."

Likewise, on appeal the Board assumes that conduct qualifies as unprofessional "so long as [it] meets the constitutional minimum of a logical nexus to [the] practice" of nursing, i.e., so long as it substantially relates to that practice. Although we need not determine the precise overlap between unprofessional conduct and conduct that is substantially related to the practice of a profession, we accept that whether the conduct at issue in this case qualifies as unprofessional conduct or substantially relates to the practice of nursing turns on the same issue: whether the conduct sufficiently established Moustafa's unfitness to be a nurse. (See § 1444; *Griffiths v. Superior Court*, *supra*,

18

96 Cal.App.4th at p. 769; *Thorburn v. Department of Corrections*, *supra*, 66 Cal.App.4th at pp. 1290-1291.) Specifically, we accept the Board's position that if Moustafa's conduct "to a substantial degree . . . evidence[d her] present or potential unfitness . . . to practice in a manner consistent with the public health, safety, or welfare" under section 1444, it also constituted unprofessional conduct under section 2761(a).

        4.      Moustafa's shoplifting conduct was substantially related to her fitness to practice nursing.

In determining that the conduct underlying three of the convictions justified a restricted license, the ALJ relied on three factual findings, one per conviction. The only source for the findings' brief descriptions of the underlying conduct was a letter from Moustafa, which is not in our record. As set forth in part I. above, her underlying conduct was (1) switching a price tag on an item at Macy's and then trying to buy the item; (2) shoplifting a dress from Macy's; and (3) removing and destroying a boot placed on her car due to unpaid parking tickets. Although we reject the Board's sweeping view of what constitutes unprofessional conduct substantially related to nursing, we conclude that Moustafa's relatively recent shoplifting sufficiently reflected her present or potential unfitness to practice nursing in a manner consistent with the public, safety, or welfare.

Initially, we reject the ALJ's apparent determination that the conduct underlying the two petty theft convictions was necessarily "substantially related by regulation" because of section 1444, subdivision (c). Although that subdivision lists "[t]heft, dishonesty, fraud, or deceit" as examples, we cannot accept the position taken by the Board at oral argument that literally *any* act involving theft, dishonesty, fraud, or deceit is substantially related to nursing. We can imagine many acts of petty theft or dishonesty that cannot reasonably be considered to relate to nursing qualifications. The theft of a candy bar by a third grader, for example, would not provide reasonable justification for the Board to deny that person a nursing license when he or she reaches adulthood. Rather, these types of acts must still, "to a substantial degree," reflect on an applicant's or licensee's "present or potential unfitness . . . to practice in a manner consistent with the public health, safety, or welfare." (§ 1444.) Thus, to the extent the ALJ's determination

19

that a substantial relationship existed "by regulation" included an implicit finding that Moustafa's past acts substantially reflected her present or potential unfitness to be a nurse merely because they involved theft and dishonesty, that finding was incorrect as a matter of law.

As the Board points out, other decisions have found conduct evincing serious dishonesty to reflect unfitness to practice a profession even when the conduct does not directly involve the profession's qualifications, functions, or duties. (See, e.g., *Pirouzian v. Superior Court* (2016) 1 Cal.App.5th 438, 447-448 (physician made "series of intentional misrepresentations to his psychiatrist, his employer, his disability insurance carrier, and the [Employment Development Department]" involving "his employment status and disability insurance benefits"]); *Windham v. Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 470 [physician committed tax fraud amounting to $65,000, suggesting inability to be honest with patients or in professional financial dealings with government].) Consistent with these authorities, another statutory ground for denying a license to a professional applicant is that the applicant has "[d]one any act involving dishonesty, fraud, or deceit with the intent to substantially benefit himself or herself or another, or substantially injure another," which does not require a separate determination that the act is substantially related to the practice of the profession. (§ 480, subd. (a)(2).) Here, however, the Board did not rely on this statutory ground to deny an unrestricted license. And even if it had, we would question whether the shoplifting of small-value items or the removal of a car boot evinced Moustafa's intent to "substantially benefit" herself or "substantially injure" another party.

Nevertheless, we conclude that Moustafa's shoplifting activity was, if only barely, substantially related to her fitness to practice nursing so as to justify a restricted license. Although we do not believe that Moustafa's conduct is comparable to the conduct at issue in the above decisions, we recognize that nurses hold positions of extreme trust and have access to the property of others, including property of vulnerable patients. Even though Moustafa shoplifted while still in college, did not take anything of significant value, and

20

did not steal from a patient or an entity she would encounter as a nurse, we cannot say as a matter of law that the conduct did not justify restricting her license.

At the same time, we see no rational basis for the Board's determination that Moustafa's act of vandalism bore on her fitness to practice nursing. The ALJ did not explain why this conduct was substantially related to nursing except for the conclusory assertion that it "evidence[d] unfitness to practice consistently with the public health, safety[,] or welfare." In our view, removing and damaging a vehicle boot cannot reasonably be considered to constitute unprofessional conduct substantially related to nursing, and it therefore was not conduct that independently qualified as a basis for the license restriction.

## III.
### DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Banke, J.

*Moustafa v. Board of Registered Nursing*  A150266

22

Trial Court:

Superior Court of the City and County of San Francisco


Trial Judge:

Hon. Harold E. Kahn


Counsel for Plaintiff and Respondent:

Radwa Mohamed Moustafa, in pro per


Counsel for Defendant and Appellant:

Xavier Becerra, Attorney General

Linda K. Schneider, Senior Assistant Attorney General

Joshua A. Room, Supervising Deputy Attorney General


*Moustafa v. Board of Registered Nursing*  A150266